UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JALLIAH JABER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:19CV1764 JCH |
| | ) |
| GC SERVICES LIMITED PARTNERSHIP, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Compel Arbitration and to Dismiss or Stay Proceedings, filed August 20, 2019. (ECF No. 8). The motion is fully briefed and ready for disposition.

**BACKGROUND**

On June 21, 2019, Plaintiff Jalliah Jaber filed her Complaint in this matter against Defendants GC Services Limited Partnership ("GC Services"), Barry Brashear, John Kokenge, and Trenda Thompson. (ECF No. 1). Plaintiff asserts claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 *et seq.*, and 42 U.S.C. § 1981. (*Id.*).

On August 20, 2019, Defendants filed the instant Motion to Compel Arbitration and to Dismiss or Stay Proceedings. (ECF No. 8). In support of their motion, Defendants assert that Plaintiff executed a valid and enforceable Mutual Agreement for Dispute Resolution, containing the following relevant provisions:

> This Mutual Agreement for Dispute Resolution ("Agreement") is for the purpose of resolving claims by single-party arbitration and is mutually binding upon both GC Services Limited Partnership (and all GC-Related Entities for which Individual works or has ever worked, which are defined as any entity owned, controlled, or managed in any manner or to any extent by GC Services Limited Partnership) (collectively, the "Company") and the applicant, employee, or individual whose name appears on the signature block below ("Individual"). The following contains the terms and conditions of the mutually binding Agreement:
>
> <u>All Disputes Must Be Arbitrated</u>. It is the intent of the parties hereto that all legally cognizable disputes between them that cannot be resolved to the parties' satisfaction through use of the Company's personal policies, must be resolved by final and binding arbitration. Claims subject to arbitration include all legally cognizable claims in the broadest context and include, but are not limited to, any dispute about the interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement, and any claim arising under any federal, state, or local statute, regulation, or ordinance, any alleged contract, or under the common law. This includes, by way of non-exhaustive illustration only, any claim of employment discrimination in any alleged form,….or any other claim, whether contractual, common-law, statutory, or regulatory arising out of, or in any way related to, Individual's application for employment with and/or employment with Company, the termination thereof, this Agreement, or any other matter incident or in any manner related thereto….
>
> <u>Applicable Rules</u>. The parties will arbitrate any disputes before and by a single neutral arbitrator appointed by the Judicial Arbitration and Mediation Service ("JAMS") who shall apply JAMS Employment Arbitration Rules & Procedures then applicable to the dispute, except as expressly modified by the parties within this Agreement. Any controversy or dispute between Individual and Company, or any of Company's owners, employees, officers, agents, affiliates, or benefit plans, arising from or in any way related to Individual's employment by Company, or the termination thereof, including, but not limited to, the interpretation, applicability, validity, existence, enforcement, or extent of arbitrability of or under this Agreement, shall be resolved exclusively by final and binding arbitration administered by JAMS….

(ECF No. 9-1, PP. 3-4).

Relying on the terms of the Agreement, Defendants maintain this Court must enforce its provisions as written and compel Plaintiff to pursue her claims through arbitration. (ECF Nos. 8, 9). Specifically, Defendants assert (1) that the Court must allow an arbitrator to determine whether the Agreement is valid and enforceable, and (2) that even if the Court declines to allow

the arbitrator to determine if the Agreement is valid and enforceable, it should find a valid and enforceable agreement to arbitrate exists. (*Id.*). In response, Plaintiff asserts (1) that her signature on the Agreement was forged, thereby rendering the document fraudulent and unenforceable, and (2) even assuming Plaintiff did sign the Agreement, it is unenforceable due to a lack of consideration. (ECF No. 14).

## DISCUSSION

### I. Forged Signature

As noted above, in her response to Defendants' motion Plaintiff first asserts the Agreement is unenforceable, because her signature thereon was forged. The Court held an evidentiary hearing on Plaintiff's claim on February 3, 2020.[1] Defendants first presented the testimony of Mr. Randy L. Pryor, a Human Resource Specialist at GC Services. Mr. Pryor testified that the first thing an applicant for employment with GC Services would do is fill out an application. Plaintiff's attorney stipulated that Defendants' Exhibit A, including the signature, was Plaintiff's employment application. According to Mr. Pryor applicants would then be interviewed, and after receiving a conditional offer of employment and passing various background checks, they would receive an offer of employment. New hires would come in for a group orientation session, over which Mr. Pryor presided at the time of Plaintiff's hiring in December, 2015.

Mr. Pryor testified that during the "onboarding" session, new employees were presented with approximately fifty pages to read and sign. He testified that for a class of about twenty people, it would take roughly one hour to obtain the required signatures. He further explained that it was not feasible for him personally to observe each employee sign his or her documents, and therefore he had no specific memory of Plaintiff signing her documents. He testified that

---

[1] Neither side presented a handwriting expert at the hearing to assist in the Court's determination.

while employees occasionally refused to sign certain documents[2], to his knowledge no one had ever refused to sign the Agreement. Mr. Pryor finally testified that he was unaware of any person other than Plaintiff signing her particular Agreement or forging her signature.

Defendants then called Plaintiff to the stand. She scrutinized each document presented to her, eventually agreeing that she signed some, and denying others.[3] Plaintiff at times agreed that it was her handwriting on a document's signature line but not the date line, or that portions of a document's handwritten aspects were hers but not others. Plaintiff's assertions often contradicted her earlier deposition testimony[4] and/or her attorneys' representations. Finally, Plaintiff testified that she did not remember signing any documents on her first day of employment at GC Services, and that it was not possible she was presented with documents to sign that day.

Upon consideration of the parties' submissions, together with the evidence presented at the hearing, the Court now finds Plaintiff's signature was not forged on the Agreement, for two reasons. First, the Court's comparison of the signature on the Agreement with other signatures that Plaintiff admits to executing reveals a vast similarity, sufficient to convince the Court that Plaintiff in fact signed the Agreement at issue. *See Greater Kansas City Laborers Pension Fund*

---

[2] Mr. Pryor testified that when employees refused to sign a document, he would have them write "refuse to sign" on the signature line.

[3] With respect to the very first document presented to her, the employment application, Plaintiff first testified that it did not look like her signature, and she did not remember signing it. Only moments later, she testified that she did remember signing the document, and that the signature was hers. This exchange took place immediately after Plaintiff's attorney unsuccessfully attempted to stipulate that the signature was in fact genuine.

[4] At one point, after Plaintiff testified in a manner that differed from her deposition, the following exchange took place:
> Q. Any reason why you're testifying differently today about whether that's your handwriting on the first page of the document?
> A. As I'm looking at it.
> Q. You just have a different opinion today about whether it's yours?
> A. Yes.

4

*v. Thummel*, 738 F.2d 926, 928 (8th Cir. 1984) (citations omitted) ("[G]enerally the trier of fact may compare a contested sample of handwriting with an authenticated sample and decide that the contested sample is authentic even in the absence of expert testimony."); *Stine Seed Co. v. A&W Agribusiness, LLC*, 862 F.3d 1094, 1099 (8th Cir. 2017) (same). Second, the Court finds Mr. Pryor's testimony at the hearing was credible, while Plaintiff's testimony was wholly incredible. Under these circumstances, the Court finds Plaintiff's claim that her signature on the Agreement was forged fails, and thus cannot serve to defeat Defendants' Motion to Compel Arbitration.

## II. **Lack of Consideration**

Plaintiff next asserts that even assuming she signed the Agreement, it is unenforceable due to a lack of consideration. Section 2 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1−16, states that an agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects the strong federal policy favoring arbitration. *AT & T Mobility LLC v. Concepcion,* 563 U.S. 333, 339 (2011). Because "arbitration is a matter of contract,….courts must rigorously enforce arbitration agreements according to their terms." *American Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (internal quotations and citations omitted). Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24−25 (1983).

"[W]hen deciding whether to compel arbitration, a court asks whether a valid agreement to arbitrate exists, and if so, whether the dispute falls within the scope of that agreement." *Newspaper Guild of St. Louis, Local 36047 v. St. Louis Post Dispatch, LLC,* 641 F.3d 263, 266 (8th Cir. 2011) (citation omitted). "A court must grant a motion to compel arbitration if a valid

arbitration clause exists which encompasses the dispute between the parties." *3M Co. v. Amtex Security, Inc.*, 542 F.3d 1193, 1198 (8th Cir. 2008) (citations omitted). Plaintiff does not dispute that her claims fall within the ambit of the Agreement. Rather, Plaintiff maintains the arbitration agreement itself is unenforceable because it lacks bargained-for consideration.

As noted above, the parties agreed to abide by the JAMS Employment Arbitration Rules & Procedures. Rule 11(b) states in relevant part as follows: "Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity , interpretation or scope of the agreement under which Arbitration is sought,….shall be submitted to and ruled on by the Arbitrator. Unless the relevant law requires otherwise, the Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."

Parties are free to agree to arbitrate threshold or "gateway" questions of arbitrability. *Rent‑A‑Center, West, Inc. v. Jackson,* 561 U.S. 63, 68-69 (2010) (noting that this "reflects the principle that arbitration is a matter of contract"). By incorporating the JAMS Rules, the parties agreed to allow the arbitrator to determine threshold questions of arbitrability. *See Frazier v. GC Services Limited Partnership*, No. 19CV2330 RWS, 2019 WL 6016338, at *2-3 (E.D. Mo. Nov. 14, 2019). "When an arbitration clause contains a clear and unmistakable agreement to arbitrate issues of arbitrability, as here, issues of the clause's enforceability will be for the arbitrator to decide unless the provision delegating such authority to the arbitrator is specifically challenged." *Hubbard v. Career Educ. Corp.,* No. 4:11CV995 CDP, 2011 WL 5976070, at *2 (E.D. Mo. Nov. 30, 2011) (citing *Rent‑A‑Center,* 130 S.Ct. at 2779) (addressing arbitration agreement that incorporated the Commercial Arbitration Rules of the American Arbitration Association); *accord Frazier,* 2019 WL 6016338, at *1 (internal quotations and citation omitted) ("A delegation

6

provision is an additional, severable agreement to arbitrate threshold issues that is valid and enforceable unless a specific challenge is levied against the delegation provision.").

Plaintiff here does not challenge the provision of the Agreement that delegates the authority to resolve issues of arbitrability to the arbitrator. *See Wallace v. Communications Unlimited, Inc.*, No. 4:18CV503 JAR, 2019 WL 1001701, at *5 (E.D. Mo. Mar. 1, 2019) ("As in *Rent-A-Center*, Plaintiffs do not directly challenge the enforceability of the delegation provision, only the validity….of the contract as a whole….Assertions that the contract lacked adequate….consideration….are clearly challenges to the validity and enforceability of the contract as a whole."). Thus, it is for the arbitrator to determine the validity of the arbitration agreement as a whole. *See Rent*‒*A*‒*Center,* 561 U.S. at 72 ("Accordingly, unless [employee] challenged the delegation provision specifically, we must treat it as valid under § 2 [of the FAA], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the Arbitrator."). *Accord Driver v. BPV Market Place Investors, L.L.C.*, No. 4:17CV1607 CAS, 2018 WL 3363795, at *6 (E.D. Mo. Jul. 10, 2018) (citation omitted) ("Plaintiff argues the Agreement lacks legal consideration, but this argument also goes to the validity of the Agreement as a whole, and concerns the issue of contract formation. The Agreement's delegation clause grants the arbitrator exclusive authority to resolve any dispute relating to the Agreement's applicability, enforceability, or formation. Again, because plaintiff does not argue that the delegation provision itself lacks legal consideration, the Court must treat it as valid, and leave plaintiff's formation challenge to the arbitrator"); *Arment v. Dolgencorp, LLC*, No. 2:18CV26 CDP, 2018 WL 5921369 at * 2 (E.D. Mo. Nov. 13, 2018).

In accordance with the foregoing, Defendants' Motion to Compel Arbitration must be granted. *See Wallace*, 2019 WL 1001701, at *6 (quoting *Jones v. Titlemax of Missouri, Inc.*, No.

4:15CV1361 JAR, 2016 WL 4158886, at *4 (E.D. Mo. Aug. 5, 2016)) ("The Court concludes that [Plaintiff has] not shown that the delegation provision in the Agreement is invalid. As such, 'the Court's only role will be to enter an order compelling arbitration.'").

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Compel Arbitration (ECF No. 8) is **GRANTED**, and Plaintiff must submit her claims to arbitration.

**IT IS FURTHER ORDERED** that Plaintiff Jaber's claims will be dismissed without prejudice. *See Frazier*, 2019 WL 6016338, at *3. A separate Order of Dismissal will accompany this Memorandum and Order

Dated this 11th Day of March, 2020.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE